Filed 7/29/13  P. v. Bellazain CA1/5

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| **THE PEOPLE,**<br><br>    **Plaintiff and Respondent,**<br><br>        v.<br><br>**PAUL BELLAZAIN,**<br><br>    **Defendant and Appellant.** | **A133985**<br><br><br>**(San Francisco City and County Super. Ct. No. 212437-03)** |

Paul Bellazain (appellant) appeals from a final judgment of conviction of numerous felonies following a jury trial.  Appellant contends the trial court erred in denying his motion for a mistrial.  We reject appellant's contention and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 4, 2010, Latanya Gaitlin lived on Redondo Street in San Francisco with several of her family members.  Around 3:00 p.m. on that day, officers responded to a report of a burglary in progress at Gaitlin's home.  San Francisco Police Officers Misaghi and Hargreaves were the first to arrive, and they directed other responding units to set up a perimeter.  Shortly thereafter, Misaghi observed three males walk out of the house toward the front gate.  The males were approximately 12 feet from Misaghi.

Appellant was walking behind two of the males, DeShawn Christopher and Terence Smith, and Misaghi immediately recognized appellant's face from a "photo" he had seen.  Misaghi ordered the men to raise their hands to ensure they were unarmed.

1

Smith and Christopher immediately complied, but appellant turned and ran back into the house. As appellant did so, Misaghi observed him make a "furtive throwing motion" in the hallway. A gun was later recovered from a box in the hallway.

Misaghi radioed for other officers to pursue appellant while he proceeded to take Smith and Christopher into custody. Appellant ran out the back of the house and was seen jumping over a fence. After detaining the two other suspects, Misaghi pursued appellant. A short time later, Misaghi encountered appellant midway down the next block as he was scaling a nearby fence. Misaghi ordered appellant to stop, but he continued to climb over the fence.

Misaghi then lost sight of appellant. After following appellant over several more fences, Misaghi found him sitting on top of a fence, which separated a backyard area from a road. Appellant was uncooperative, but he was eventually taken into custody.

Around the same time appellant was arrested, officers received a report of another person, a juvenile, who was attempting to flee from police. The juvenile was taken into custody in connection with the burglary of a different house in the same area. Police recovered a silver iPod and a package of cigars along the flight path of the juvenile.

Later that afternoon, Gaitlin was notified at her workplace that her house had been burglarized. She returned home to find that her bedroom and several other areas of the house had been disturbed. Handbags, jewelry, and a purple iPod were missing from the house. These items were later found in the possession of either Smith or Christopher. Gatlin reported that the box of cigars and the silver iPod recovered from the juvenile did not belong to any of her family members.

The jury trial commenced on August 16, 2011, and the three men were jointly tried. On August 22, the San Francisco District Attorney filed a second amended information charging appellant with first degree residential burglary (Pen. Code, § 459) (count 1); receipt of stolen property (*id.*, § 496, subd. (a)) (count 2); illegal possession of a firearm by a felon (*id.*, former § 12021, subd. (a)(1), now § 29800, subd. (a)(1)) (count 3); possession of a loaded firearm (*id.*, former § 12031, subd. (a)(1), now § 25850, subd. (a)) (count 4); and two counts of resisting arrest (*id.*, § 148, subd. (a)(1)) (counts 5 & 6).

2

Counts 1 and 2 also alleged an enhancement for use of a firearm (*id.*, § 12022, subd. (a)(1)). On August 24, the jury found appellant guilty on counts 1, 2, 3, 5, and 6, and acquitted him on count 4.[1] On September 23, the court sentenced appellant to an aggregate term of eight years in prison. Appellant filed a timely notice of appeal.

## DISCUSSION

Appellant contends the trial court erred in refusing to order a mistrial when Smith offered a defense that conflicted with his own. We disagree. Although appellant and Smith took different paths in defending against the charges, the defenses were not mutually exclusive. The jury's acceptance of Smith's approach would not foreclose the possibility the jury could also have believed appellant's theory.

Prior to trial, appellant brought a motion to sever based on concerns the prosecution planned to introduce statements by Smith and Christopher that implicated him. The prosecutor indicated he did not plan to use the statements, and the court denied the motion as "largely moot." Appellant does not challenge that ruling on appeal. At the close of the prosecution's case, appellant made a motion for a mistrial based on the court's failure to sever his case from those of Christopher and Smith. Appellant challenges the ruling denying that motion.

"The Legislature has expressed a preference for joint trials." (*People v. Carasi* (2008) 44 Cal.4th 1263, 1297 (*Casari*).) "When two or more defendants are jointly charged with any public offense, whether felony or misdemeanor, they must be tried jointly, unless the court order[s] separate trials." (Pen. Code, § 1098.) "A 'classic' case for joint trial is presented when [the] defendants are charged with common crimes involving common events and victims. [Citation.]" (*People v. Keenan* (1988) 46 Cal.3d 478, 499-500.) "We review a trial court's denial of a severance motion for abuse of discretion based on the facts as they appeared when the court ruled on the motion. [Citation.]" (*People v. Lewis* (2008) 43 Cal.4th 415, 452.) If the court's ruling was proper at the time it was made, a reviewing court may reverse a judgment only on a

---

[1] Christopher and Smith were charged with counts 1 and 2, and the jury found them guilty on both counts.

showing that the joint trial " 'resulted in "gross unfairness" amounting to a denial of due process.' " (*People v. Mendoza* (2000) 24 Cal.4th 130, 162.)

"A trial court should grant a mistrial only when a party's chances of receiving a fair trial have been irreparably damaged . . . . [Citation.]" (*People v. Silva* (2001) 25 Cal.4th 345, 372.) " ' "Whether a particular incident is incurably prejudicial is by its nature a speculative matter, and the trial court is vested with considerable discretion in ruling on mistrial motions." [Citation.]' " (*People v. Harris* (1994) 22 Cal.App.4th 1575, 1581.)

Initially, appellant argues severance was warranted because he was prejudiced by the testimony of Smith's father, Alfred Terrell, who told jurors that Smith acknowledged he had made "a huge mistake," and felt remorse over the incident. Appellant seems to contend this was tantamount to testifying to a confession by Smith. Even if this properly characterizes Terrell's testimony, severance was not required. Confessions by codefendants require a severance only if they implicate other jointly tried defendants. (*People v. Hoyos* (2007) 41 Cal.4th 872, 895 ["if the prosecutor in a joint trial seeks to admit a nontestifying codefendant's extrajudicial statement, either the statement must be redacted to avoid implicating the defendant or the court must sever the trials"], overruled on another ground by *People v. McKinnon* (2011) 52 Cal.4th 610, 637-643; accord, *People v. Gamache* (2010) 48 Cal.4th 347, 379.) While the statement suggested Smith was guilty of some crime, it did not implicate appellant. At no point during his testimony did Terrell refer to appellant by name or suggest appellant was in any way involved.

Second, appellant contends severance was required because Terrell's testimony created conflicting defenses among the codefendants. He argues Smith's approach was essentially to admit guilt to possessing stolen property, maintain his innocence as to the burglary charge, and cast himself as remorseful and cooperative. Appellant, on the other hand, continued to maintain he was mistakenly identified as the third perpetrator. But this conflict did not mandate separate trials. As our Supreme Court has explained, in order to justify severance, a defendant must demonstrate " ' "that the conflict is so prejudicial that [the] defenses are irreconcilable, and the jury will unjustifiably infer that

4

this conflict alone demonstrates that [all] are guilty." ' [Citation.]" (*People v. Souza* (2012) 54 Cal.4th 90, 111.) Even defense theories that are hostile to one another or attempt to cast blame on codefendants do not warrant separate trials. (*People v. Tafoya* (2007) 42 Cal.4th 147, 162 (*Tafoya*).) Instead, conflicting defenses warrant severance only "where the acceptance of one party's defense precludes the other party's acquittal. [Citation.]" (*Carasi, supra,* 44 Cal.4th at p. 1296.) Smith's and appellant's defense theories were not irreconcilable: Jurors could have believed Smith was guilty of only possession of stolen property and felt remorseful for his actions, and also that appellant had been misidentified by police as the third perpetrator simply because he was in the wrong place at the wrong time.

Finally, appellant contends separate trials were required because Smith's counsel "consistently" and "repeatedly" referred to the third person by name as appellant, in conflict with appellant's theory he had been misidentified by police.[2] Assuming that counsel in fact made such comments, they did not warrant trial severance. The jury was instructed that neither counsel's questions nor her closing argument were evidence and could not be used as a basis to decide the case. "We assume that the jury followed this instruction." (*People v. Wilson* (2008) 44 Cal.4th 758, 798.) Additionally, as noted above, hostile defense theories that attempt to cast aspersions on codefendants are an insufficient basis for severance. (*Tafoya, supra,* 42 Cal.4th at p. 163.)[3]

DISPOSITION

The judgment is affirmed.

---

[2]  We note, despite these claims, appellant never provides any citation in his briefing to a place in the record where Smith's counsel actually did so.

[3]  To the extent appellant raises Smith's objection to CALCRIM No. 373 as a separate basis for reversal, we reject it. The court ultimately agreed to instruct the jury with CALCRIM No. 373, as appellant requested, so no possible prejudice resulted from the objection.

_____
SIMONS, J.

We concur.

_____
JONES, P.J.

_____
BRUINIERS, J.